## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| A CORP. | ) |
| ROOTERMAN, LLC | ) |
| | ) |
| Plaintiffs | ) |
| | ) CIVIL ACTION NO. |
| v. | ) |
| | ) |
| AMERICA'S PLUMBING & SEWER, LLC; | ) |
| ROGER MILNER | ) |
| | ) |
| Defendants | ) |
| | ) |

## VERIFIED COMPLAINT
## FOR INJUNCTIVE RELIEF AND DAMAGES

### INTRODUCTION

This suit is brought by Plaintiffs A Corp., the former franchisor of the Rooter Man franchise ("A Corp."); and RooterMan LLC, the current franchisor of the Rooter Man franchise and the owner of certain federally registered Rooter Man trademarks (collectively the "Plaintiffs"), against Defendants America's Plumbing & Sewer, LLC ("APS") and Roger Milner ("Milner"), the former Rooter Man franchisee, for willful federal trademark infringement, false designations of origin, dilution of RooterMan LLC's famous federal trademark, breach of contracts with A Corp. and breach of implied covenant of good faith and fair dealing.

### PARTIES

1. A Corp. is a corporation, duly organized under laws of the Commonwealth of Massachusetts, with its principal place of business at 268 Rangeway Road, N. Billerica, Massachusetts.

2. RooterMan LLC is a limited liability company duly organized under the laws of State of Delaware, with its principal place of business at 126 Garrett Street, Suite J, Charlottesville, Virginia 22902.

3. Defendant America's Plumbing & Sewer, LLC is a Tennessee limited liability company with is principal place of business at 4308 South Ter., Chattanooga, Tennessee, 37412-2904.

4. Defendant Roger Milner is an individual, on information and belief, residing at 7311 Blazing Star Ct., Ooltewah, Tennessee, 37363.

5. On information and belief, Roger Milner is the owner, manager, and registered agent of his APS LLC entity.

6. On information and belief, APS and/or Milner also work at 7339 Lee Hwy, Chattanooga, TN 37421.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the present disputes under 28 U.S.C. §§ 1338(a) & (b).[1]  In addition, subject matter jurisdiction is satisfied based on diversity jurisdiction under 28 U.S.C. § 1332 (a).

8. This Court may exercise personal jurisdiction over Defendants APS and Milner pursuant to the §19.6 of the Franchise Agreement (as defined below) and the Termination Agreement (as defined below).

9. Defendants APS and Milner established sufficient contact with the Commonwealth of Massachusetts that personal jurisdiction over them is appropriate under the Massachusetts Long-arm statute and the Constitutional Due Process.

---

[1] 28 U.S.C.§ 1338(a) states that "the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to…copyrights and trademarks;" 28 U.S.C.§ 1338(b) provides that "the district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright…trademark laws."

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and the Franchise Agreement §19.6 and the Termination Agreement.

## FACTS RELEVANT TO ALL COUNTS

### *Relevant Background of A Corp. and RooterMan LLC:*

11. In or around 1980, A Corp.'s affiliate, Rooter Man Corp., started to use the name of Rooter Man and A Rooter Man to operate sewer and drain cleaning services in Massachusetts and the surrounding states.

12. In or around January of 1981, Rooter Man Corp. designed and adopted the logo for the name of Rooter Man and started to offer Rooter Man franchises that provided plumbing, sewer, and drain cleaning services in Massachusetts and interstate commerce.

13. In or around July of 1981, Rooter Man Corp. registered the Rooter Man mark with the Secretary of the Commonwealth of Massachusetts and was incorporated on or about January 1, 1982.

14. A Corp. was incorporated on or about March 3, 1982, to facilitate Rooter Man Corp. in its sales of the Rooter Man franchises.

15. In 1990, Rooter Man Corp. assigned all of its rights in the Rooter Man name/marks together with its Rooter Man franchise business to A Corp.

16. A Corp.'s Rooter Man franchise has consistently advertised for plumbing, sewer, and drain cleaning services in major yellow page directories such as NYNEX, currently known as Verizon yellow pages, which covered New England areas including Massachusetts and beyond.

17. Through its active use of the Rooter Man mark through the United States and worldwide, the Rooter Man name/mark has become distinctively identified in the trade with A Corp. and, in

particular, with its growing reputation for plumbing, sewer, and drain cleaning services that

its franchisees provide.  As of December 31, 2021, there were approximately ninety-two (92)

franchisees operating six hundred eighty-seven (687) locations in thirty seven (37) states in

the U.S. and also five (5) franchisees with fifty (50) units being operated in Canada.

18. A Corp. obtained registrations of multiple Rooter Man trademarks with the United States

Patent and Trademark Office on the principal registration including without limitation:

    a.  Rooter Man (and design) on September 3, 1991 (Reg. No. 1,655,782);



    b.  Rooter Man (words only) on October 12, 2010 (Reg. No. 3,859,654);



    c.  A Rooter Man to the Rescue (and design) on August 20, 1991 (Reg. No. 1,654,512);



    d.  Rooter Man Plumbers to the Rescue (and design) on August 14, 2012 (Reg. No. 4,189,503):



    e.  Rooter Man to the Rescue (and design) on March 17, 2020 (Reg. No. 6,013,446);



The above-mentioned marks shall be collectively referenced as the "Rooter Man Marks" and *Exhibit 1 is attached hereto for the above referenced registrations*.

19. A Corp.'s use of the Rooter Man Marks has been continuous and never been abandoned or revoked.  A screenshot of the main page of its website at www.rooterman.com as an example of said use is:



20. In 2021, A Corp.'s Rooter Man franchise had been ranked #1 Plumbing Franchise by Entrepreneur Magazine in plumbing category for the 19th consecutive year; and among the top franchises, Rooter Man brand was ranked #79 in Entrepreneur Magazine's Annual Franchise 500.

21. On January 20, 2022, A Corp. assigned and transferred to RooterMan LLC all A Corp.'s right, title, and interest in its federally and state registered Rooter Man Marks, domains, copyrighted Rooter Man website, and all then current Rooter Man franchise agreements, which did not include the Franchise Agreement with APS and/or Milner and the Termination Agreement.

22. RooterMan LLC is now the Rooter Man franchisor and the owner of the Rooter Man Marks.

***Facts relevant to the Franchise Agreement concerning Defendants APS and Milner***

23. After at least 14 days to review the Rooter Man franchise disclosure document and the prospective Franchise Agreement, APS entered into a Franchise Agreement with A Corp.

with a commencement date on April 10, 2009 and purchased certain rights to use the Rooter

Man brand name and concept, subject to the terms and conditions in the agreement, in certain

areas in Chattanooga in Tennessee.  Said Franchise Agreement expired on or about April 10,

2014, when APS and A Corp. entered into a then current Franchise Agreement which would

expire on April 10, 2024.  The 2014 Franchise Agreement, as subsequently amended,

modified or supplemented are hereby collectively referred to as the "Franchise Agreement".

*See Exhibit 2 for a true and accurate copy of the Franchise Agreement with a commencement*

*date of April 10, 2014.*

24. On or about August 18, 2014, as part of the Franchise Agreement, Roger Milner as an

individual signed a "Guaranty of Performance" as the owner of APS and agreed to personally

guarantee the performance of the Franchise Agreement.

25. The phone number designated for the Rooter Man franchised business for APS and Milner

was (423) 855-2828.

26. Over the years and upon multiple occasions, Milner traveled to Boston individually and on

behalf of APS to participate in the Rooter Man franchise training held at the Embassy Suites

Hotel in Boston, Massachusetts including without limitation the trainings held on January

12th & 13th, 2013; May 3rd & 4th, 2014; July 11th & 12th, 2015; and March 25th & 26th, 2017.

27. It was later discovered that APS and/or Milner registered or caused to be registered a domain

name, rooterman24-7.com (the "Infringing Domain") on or about December 29, 2010

containing the wording "rooterman" that is identical to A Corp.'s Rooter Man trademark,

which was beyond the limited scope of their license granted in the Franchise Agreement[2].

---

[2] To maintain and enforce the uniformity regarding domains and websites within the Rooter Man franchise system,
since 2017, the Rooter Man franchise agreement has expressly stated that the franchisees are not allowed to register
or maintain any domain name using the Rooter Man trademarks.

28.  In September of 2021, Milner contacted A Corp. about sale and/or transfer of his APS business to Hiller, LLC who initially intended to continue operating the purchased business as a Rooter Man franchise in the same territory licensed to APS.

29. However, because Hiller indicated that they could not comply with the Rooter Man franchise agreement like all other franchisees, A Corp. and APS agreed to early terminate APS' Franchise Agreement so APS could transfer its business assets to Hiller without transferring any rights licensed to it to use the Rooter Man brand name, trademarks, and system.

30. On November 22, 2021, APS' Franchise Agreement was terminated by way of a Termination Agreement between APS and Milner on one side and A Corp. on the other (the "Termination Agreement"). *See Exhibit 3 for a true and accurate copy of the Termination Agreement.*

31. As Milner requested, A Corp. waived the non-competition restriction in the Franchise Agreement so that Milner could continue working for Hiller in Tennessee in competition with all other Rooter Man franchisees within the same areas of Hiller's services, provided however, APS and Milner must fully comply with their obligations to de-identify as Rooter Man as required by the Termination Agreement Paragraph 6.

32. Under the Termination Agreement, Paragraph 6. De-Identification as Franchisee, APS and Milner agreed within 30 days of termination of the Franchise Agreement, they must:

> "…
>
> d.  As of the date of this Agreement, the following links constitute a non-exclusive list of APS' internet advertisements, listings and/or social media publications using the Rooter Man name/mark, which APS shall be obligated to change:
>
> > i.  https://www.google.com/search?q=ROOTERMAN+chattanooga&rlz=1C1CHBF_enUS789US789&ei=O-qLYcuUG4-a_QaR3bSoAQ&start=0&sa=N&ved=2ahUKEwiLnub2ko70AhUPTd8KHZEuDRU4ChDy0wN6BAgBEDc&biw=1719&bih=907&dpr=1
>
> This link led to APS and/or Milner's Google Place Display advertisement using the name Rooter Man (the "Google Ads").

…

e. APS shall transfer the registration(s) of the domain(s), using the Rooter Man name/mark including without limitation rooterman24-7.com that was obtained, purchased, or registered by APS to A Corp. at no cost to A Corp.

…

g. APS shall return to A Corp. all manuals, any such printed materials, and disks received from A Corp or bearing the Rooter Man name/marks; for the purpose to clarify and not to limit, said printed materials shall include without limitation blank invoices, office stationaries, letter head, stickers, envelopes, business cards, etc.; and

h. APS shall not adopt or use any such name/mark that is confusingly similar to the Rooter Man name and marks; and shall not file for, or acquire any state, federal or international registration of any trademark or service mark (or variation thereof) which is confusingly similar to the Rooter Man marks."

33. Upon termination of the Franchise Agreement, the Franchise Agreement §16 requires that

APS and Milner must de-identify their use of the Rooter Man name, mark, and system:

"Upon termination or expiration of this Agreement, **FRANCHISEE** shall within 30 calendar days:

**A.**     Pay all Continuing Royalty Fees, Advertising Contributions and all other charges or debts owed to **A CORP**., including the balance due on financing or other extension of credit granted or given by **A CORP** to **FRANCHISEE**.

**B.**     Cease to hold himself or herself out as an **A CORP**. System franchise, cease the use of the   Trademarks, logos, designs, materials, methods, promotional materials whether or not furnished by **A CORP**. and all other advertising, including without limitation, all forms of telephone directory advertising, and remove all signs, and Trademarks, in whatever form, from the location of the **A CORP**. office licensed by this Agreement and from all vehicles.

**C.**     Return to **A CORP**. all manuals and printed materials belonging to **A CORP**. or bearing the Trademarks…"

***APS and/or Milner Failed to de-identify as Rooter Man after the termination of the Franchise Agreement*:**

34.  APS and Milner took no action at all to start de-identifying as Rooter Man after termination of the Franchise Agreement until about 45 days after the termination and as a result of A Corp.'s demand.

35. With respect to the rooterman24-7.com domain transfer, Milner initially asked to keep it as they used Jennifer.milner@RooterMan24-7.com as their primary business email address.

36. A Corp. responded that upon termination of their Franchise Agreement, APS and Milner lost their license to use the Rooter Man brand name in any manner, and that they had no right to register said domain in the first place which was beyond the scope of their license granted by the Franchise Agreement.

37. Then Milner contacted A Corp. and purported that it cancelled the email Jennifer.milner@RooterMan24-7.com, which was used to communicate with the domain registrar, GoDaddy, and therefore, could not get access to his GoDaddy's account to transfer the domain.  However, A Corp.'s web master discovered that said email address was still valid and functioning.

38. After several weeks back and forth with Milner who alleged impossibility to transfer the domain, A Corp. contacted GoDaddy and was advised that because Milner had the control over his own domain account with GoDaddy, even though the email address was not in use, Milner could just call GoDaddy and GoDaddy could help to transfer the domain, which GoDaddy does all the time.

39. With respect to APS' Google Ads in the Rooter Man name, and all the photos showing their use of the Rooter Man brand name and trademarks, APS and/or Milner, upon A Corp.'s

demand, removed most of the photos except a service truck photo having Rooter Man image on the side of the truck and told A Corp. that said truck photo could not be deleted.

40. The Rooter Man name in aforementioned Google Ads was initially marked as "permanently closed" which A Corp. objected as it would mislead the public that Rooter Man branded services went out of business and would be detrimental to the new Rooter Man franchisees in the same area. A Corp. suggested that APS and/or Milner change the Rooter Man name to either APS or Hiller which are their current business name.

41. However, rather than to use the APS' business name or Hiller's name as A Corp. suggested, APS and/or Milner modified the Rooter Man name in the Google ads to **Rooter Man**agement & Repair and uploaded photos of a newly adopted design of a white service vehicle having the name **Rooter Man**agement wording and a sewer pipe with a snake device inserted into the pipe design under the wording, which is identical to the sewer pipe and snake device design in the Rooter Man Marks:



    a.  The wording "**Rooter**" is used in conjunction with the following word "**Man**agement" which contains the Rooter Man wording that looks and pronounces like Rooter Man; the red color for "Rooter" and blue color for "Management" are identical to the Rooter Man marks.

b.  The design of the sewer pipe with a snake device inserted into the pipe below the wording is apparently copied from the sewer pipe element in the Rooter Man marks using the same design and color.

c.  the newly adopted and used **Rooter Man**agement & Repair and sewer pipe design are posted on the side of a white service vehicle image, which is also identical to the Rooter Man truck image at www.rooterman.com.

*See Exhibit 4 for a copy of the screenshot of aforementioned Google Ads photo dated February 7, 2022.*

42. The newly adopted **Rooter Man**agement & Repair and sewer pipe design are in clear violation of the Termination Agreement Section 6(h) that prohibits APS and Milner from adopting or using "any such name/mark that is confusingly similar to the Rooter Man name and marks."

43. Within the Google Ads, there are approximately 483 Google reviews of APS and/or Milner's former Rooter Man brand business with an average rate 4.8 out of 5 by customers, which are valuable goodwill associated with the Rooter Man brand.

44. The Franchise Agreement Section 8.1 states, in pertinent part:

> "FRANCHISEE acknowledges that valuable goodwill is attached to such Trademarks. All goodwill associated with the Trademarks, including the goodwill generated by FRANCHISEE and all other franchisees while conducting business under the Trademarks, is and shall remain the property of A Corp."

The foresaid "Trademarks" are defined in the Franchise Agreement as "various registered names and marks which A Corp. owns…"

45. As such, all customer reviews about APS and/or Milner's former Rooter Man franchised business are valuable goodwill that belongs to A Corp.

46. APS and/or Milner's refusal to use its own APS or Hiller's name as A Corp. suggested for their Google Ads and adoption of a new name containing the Rooter Man brand name and sewer pipe logo together with the previous customer reviews of Rooter Man in the same Google Ads account, give the overall impression that their Google Ads is owned, endorsed, or sponsored by Rooter Man brand and that they are still associated with the Rooter Man brand.

47. On February 23, 2022, A Corp. contacted APS and Milner and demanded that within 10 days of the letter:

> "i. You must call GoDaddy to transfer the domain rooterman24-7.com to A Corp.
>
> ii.  About Google Place ads: (a) you must remove the old Rooter Man truck photo; (b) you must remove the photo of Rooter Management & Repair name with sewer pipe design; **and** (c) you must mark the "Rooter Management & Repair" (words only) as permanently closed."  *See Exhibit 5 for a true and accurate copy of the letter dated February 23, 2022.*

48. As a result of the February 23, 2022 letter, APS and/or Milner finally transferred the domain rooterman24-7.com to A Corp. and removed the Rooter Man truck photo from the Google Ads.

49. As to the **Rooter Man**agement & Repair name and the white truck photo with the sewer pipe logo published in APS and /or Milner's Google Ads, however, APS and/or Milner refused to change the name and slightly modified the sewer pipe design by copying the bell coupling with notches design from the sewer pipe design of the Rooter Man Marks, specifically Reg. No. 4,189,503:



*See Exhibit 6 for a copy of the screen shot of aforementioned Google Ads photo page dated June 10, 2022.*

50. The overall newly modified **Rooter Man**agement & Repair with a sewer pipe logo under is confusingly similar to the Rooter Man Marks in terms of sound, visual, and commercial impressions.

51. The **Rooter Man**agement & Repair is apparently inconsistent with APS' own business name or image, or Hiller's name or image, but confusingly similar to the Rooter Man name and image which APS and Milner do not have any authorization to use.  The only explanation of APS and/or Milner's resistance to stay away from the Rooter Man brand is their attempt to pass off the goodwill associated with the Rooter Man brand without authorization.

52. It was recently discovered that APS and/or Milner's Rooter-Man ads with Yahoo, https://search.yahoo.com/search?p=rooter+man+chattanooga+tn&fr=yfp-t-s&fr2=p%3Afp%2Cm%3Asa%2Cct%3Asa%2Ckt%3Anone&ei=UTF-8&fp=1 is still active with the Rooter Man trademark (Reg. No. 4,189,503) image and the same phone number (423) 855-2828 designated for their former Rooter Man franchise:



Obviously, APS and/or Milner benefit from unauthorized use of the Rooter Man brand. *See Exhibit 7 for a copy of the screenshot of said Yahoo ads dated June 10, 2022.*

53. Under the Termination Agreement Section 10(c), said agreement is governed by Massachusetts laws and any action arising out of it "shall be commenced only in a court of competent jurisdiction sitting within Massachusetts."

54. The Termination Agreement Section 9 provides that:

"the party seeking enforcement shall be entitled to an award of all costs, fees, and expenses, including attorney's fees, to be paid by the party against whom enforcement is ordered."

55. The Franchise Agreement §19.6 states:

"This Agreement shall be governed and construed under and in accordance with the laws of the Commonwealth of Massachusetts. A Corp. and Franchisee agree that any action arising out of or relating to this agreement will be brought by the parties only…or the United States District Court of the District of Massachusetts in Boston, Massachusetts. A Corp. and Franchisee hereby consent to the jurisdiction so such Courts and further agree to waive any rights or objections to the jurisdiction or venue of any such actions when filed in such courts."

56. Under the Franchise Agreement §19.7:

"if A Corp. must engage an attorney to enforce its rights under this Agreement, Franchisee shall reimburse A Corp. for all of its reasonable attorney's fees, court costs and expenses incurred in connection with such legal action."

**COUNT I**
**Federal Trademark Infringement**
**(By RooterMan LLC Against APS and Milner)**

57. Plaintiffs restate and incorporate the allegations contained in Paragraphs 1-56 as if fully set forth herein.

58. Since at least 1981, A Corp. has continuously and in good faith used in commerce within the United States and worldwide the Rooter Man Marks to indicate the source of its Rooter Man franchises and related plumbing, sewer, and drain cleaning services. A Corp. assigned its

title, interest, and all rights in the Rooter Man Marks and goodwill associated with the Rooter Man Marks to RooterMan LLC.

59. RooterMan LLC owns the U.S. trade/service mark registrations of multiple Rooter Man Marks in connection with the sale of Rooter Man franchises and related plumbing, sewer and drain cleaning services. The registered marks are valid, subsisting and unrevoked. The registration is prima facie evidence of the validity of the Rooter Man mark registrations, RooterMan LLC's ownership of the marks, and RooterMan LLC's exclusive right to use, without condition or limitation, the mark in commerce within the United States and worldwide in connection with the sale of Rooter Man franchises and related plumbing, sewer and drain cleaning services provided by the Rooter Man franchisees.

60. There is no showing that APS and/or Milner ever used Rooter Man Marks prior to RooterMan LLC's federal registrations, and their licensed right to use the Rooter Man Marks ended when the Franchise Agreement was terminated on November 22, 2021.

61. APS and/or Milner refused to fully de-identify as Rooter Man in compliance with A Corp.'s demand, Termination Agreement, and the Franchise Agreement by using a new business name containing the Rooter Man name and a sewer pipe design that was copied from the sewer pipe design in multiple Rooter Man marks, all without A Corp. and/or RooterMan LLC's permission.

62. APS' subsequent, knowing, and unauthorized use of the Rooter Man Marks is associated with plumbing, sewer, and drain cleaning services in direct competition with RooterMan LLC's Rooter Man franchises and is likely to cause confusion to the public as to the source of his services is from a Rooter Man brand franchise.

63. APS and/or Milner's conduct amounted to counterfeit copy and colorable imitation of RooterMan LLC's federally registered Rooter Man Marks as used in connection with plumbing, sewer, and drain cleaning services.  By such use, APS and/or Milner is likely to cause confusion, or to cause mistake, or to deceive, all constituted willful federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

64. As a result, RooterMan LLC suffered and is continuing to suffer irreparable injury, such as, without limitation, loss of potential business, capacity to compete in the marketplace, goodwill, and reputation in the field.

65. APS and/or Milner's intentional infringement of RooterMan LLC's Rooter Man Marks entitles RooterMan LLC to injunctive relief, actual damages, his profits, plus costs, all subject to multiple damages together with a reasonable attorney's fee provided by 15 U.S.C. § 1117 and all other applicable laws.

66. Given the willful nature of APS and/or Milner's infringement, RooterMan LLC is entitled to statutory damages in an amount of two (2) million dollars per counterfeit mark afforded by 15 U.S.C. § 1117 (c) and reasonable attorney's fees and cost to enforce its trademark rights.

WHEREFORE, RooterMan LLC demands judgment in its favor on Count I of this Complaint together with interest, costs, and attorney fees.

**COUNT II**
**False Designations of Origin, False Descriptions**
**(by RooterMan LLC Against APS and Milner)**

67. Plaintiffs restate and incorporate the allegations contained in Paragraphs 1-66 as if fully set forth herein.

68. Given the former franchise relationship with A Corp., there is no doubt that APS and Milner knew of A Corp. and its assignee's rights to the Rooter Man Marks when it subsequently

used the Rooter Man Marks in violation of the Franchise Agreement and after the termination of the Franchise Agreement without A Corp. and/or its assignee RooterMan LLC's authorization.

69. APS' and/or Milner's subsequent and unauthorized use of the Rooter Man Marks associated with the same plumbing related services as other Rooter Man franchises and use of the same contact phone number that was designated for their former Rooter Man franchise is likely to cause confusion as to the business relationship and/or affiliation between them and the Rooter Man brand owner.

70. As a result, RooterMan LLC suffered damages to its business in the form of loss of potential profits, injury to goodwill and reputation in the field, all in amounts which are not yet fully ascertainable. To date and despite ample warning, APS and Milner refused to fully comply with their contractual de-identification obligations to stop the unauthorized and unlawful use of the Rooter Man Marks.

71. APS' and Milner's knowing, and unauthorized use of the Rooter Man Marks constituted willfully false designations of origin and federal unfair competition all as prohibited by § 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and in violation of RooterMan LLC's exclusive right to use the Rooter Man Marks.

72. APS and Milner's willful infringement entitles RooterMan LLC to injunctive relief, actual damages, APS and/or Milner's profits, plus costs, all subject to multiple damages together with a reasonable attorney's fee provided by 15 U.S.C. § 1117 and all other applicable laws.

73. Given the willful nature of APS and/or Milner's infringement, RooterMan LLC is entitled to statutory damages in an amount of two (2) million dollars per counterfeit mark afforded by 15 U.S.C. § 1117 (c).

WHEREFORE, RooterMan LLC demands judgment in its favor on Count II of this Complaint together with interest, costs, and attorney fees.

## COUNT III
### Injury to Business Reputation and Trade/Service Mark –Dilution
### (by RooterMan LLC Against APS and Milner)

74. Plaintiffs restate and incorporate the allegations contained in Paragraphs 1-73 as if fully set forth herein.

75. A Corp. has at least since 1981 continuously and in good faith used the Rooter Man marks in the interstate commerce in the United States and worldwide in connection with offers of the Rooter Man franchises that provide plumbing, sewer and drain cleaning services.  As a consequence of the use of the mark, the Rooter Man mark have become distinctive in the minds of the field, business community, and the public of the reputation of Rooter Man franchises and the quality of the services that Rooter Man name holders provide.

76. In 2021, the Rooter Man franchise had been ranked #1 Plumbing Franchise by Entrepreneur Magazine for the 19th consecutive year; and among the top franchises, Rooter Man brand was ranked #79 in Entrepreneur Magazine's Annual Franchise 500.

77. .  A Corp. assigned its title, interest, and all rights in the Rooter Man Marks and goodwill associated with the Rooter Man Marks to RooterMan LLC.

78. APS and/or Milner's subsequent and unauthorized use of the Rooter Man Marks associated with sale of the same services as the Rooter Man franchises is commercial in nature and is used in the interstate commerce, in both GA and TN, without A Corp. and/or its assignee RooterMan LLC's consent.

79. APS and/or Milner's conduct diluted the distinctive quality of the Rooter Man Marks, which caused and is continuing to cause RooterMan LLC to suffer irreparable damages as to the

value of the Rooter Man Marks, potential loss of business, injury to its goodwill and reputation in the field since members of the public may erroneously believe that APS and/or Milner is associated, endorsed, or affiliated relationship with RooterMan LLC.  To date and despite ample warning, APS and/or Milner failed to fully stop the unauthorized and unlawful use of the Rooter Man Marks.

80. As a result, RooterMan LLC suffered damages to its business in the form of loss of potential profits, injury to goodwill and reputation in the field.

81. APS and/or Milner's conduct constituted willful violation of 15 U.S.C. § 1125(c) and entitles RooterMan LLC to injunctive relief, actual damages, APS and/or Miler's profits, plus costs, all subject to multiple damages together with a reasonable attorney's fee provided by 15 U.S.C. § 1117 and all other applicable laws.

82. Given the willful nature of APS and/or Milner's infringing conduct, RooterMan LLC is entitled to statutory damages in an amount of two (2) million dollars provided by 15 U.S.C. § 1117 (c).

WHEREFORE, RooterMan LLC demands judgment in its favor on Count III of this Complaint together with interest, costs, and attorney fees.

## COUNT IV
### Cybersquatting
### (by RooterMan LLC Against APS and Milner)

83. Plaintiffs restate and incorporate the allegations contained in Paragraphs 1-82 as if fully set forth herein.

84. With actual knowledge of A Corp.'s federal registrations of the Rooter Man Marks, and without A Corp.'s authorization, APS and/or Milner registered or caused to be registered

Infringing Domain <u>rooterman24-7.com</u>, which contain the wording "rooterman" that is confusingly similar, if not identical, to the Rooter Man Marks.

85. APS and/or Milner's registrations of the Infringing Domains was obtained subsequent to the registrations of the Rooter Man Marks without authorization in attempt to unlawfully profit from the Rooter Man Marks.

86. The Rooter Man Marks were distinctive and incontestable at the time when the Infringing Domains were created and first registered.

87. APS and/or Milner used the Infringing Domain based email address to solicitate, offer and sell plumbing related services in competition with other Rooter Man franchisees and refused to timely comply with A Corp's demands to transfer the domains to A Corp. or cancel the domain registrations.

88.  A Corp. assigned its title, interest, and all rights in the Rooter Man Marks and goodwill associated with the Rooter Man Marks to RooterMan LLC.

89. APS and/or Milner's conduct constituted cybersquatting in violation of the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).

90. As a result, RooterMan LLC suffered damages to be determined at trial or RooterMan LLC has the right to elect statutory damages from $1,000.00 up to $100,000.00 per infringing domain.

WHEREFORE, RooterMan LLC demands judgment in its favor on Count IV of this Complaint together with interest, costs, and attorney fees.

**COUNT V**
**Breach of Contract**
**(by A Corp. Against APS and Milner)**

91. Plaintiffs restate and incorporate the allegations contained in Paragraphs 1-90 as if fully set forth herein.

92. The Franchise Agreement is a valid contract between APS and A Corp. on the other.

93. The personal guaranty given by Roger Milner to guarantee the performance of the Franchise Agreement is a valid contract between Milner and A Corp.

94. The Termination Agreement is a valid contract between APS and Milner on the one side and A Corp. on the other.

95. A Corp. fully performed its contractual obligations.

96. APS and Milner breached the Franchise Agreement by refusal to fully de-identify as Rooter Man after their Franchise Agreement was terminated.

97. APS and Milner breached the Termination Agreement by failing to fully de-identify as Rooter Man.

98. APS and Milner breached the Termination Agreement and the Franchise Agreement by adopting and using: (i) a new business name that is confusingly similar to the Rooter Man name/mark; (ii) a sewer pipe with a snake device inserted into the pipe design that is confusingly similar to the sewer pipe design in the Rooter Man marks; and (iii) continue their plumbing related business in competition with other Rooter Man franchises before they fully de-identify as Rooter Man.

99. As a result, A Corp. suffered monetary damages in an amount to be determined at trial.

100.    Under the Franchise Agreement and the Termination Agreement APS and /or Milner agreed to be liable for A Corp.'s legal expenses including reasonable attorney's fees and cost to enforce A Corp.'s contractual rights.

WHEREFORE, A Corp. demands judgment in its favor on Count V of this Complaint together with interest, costs, and attorney's fees.

## COUNT VI
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (by A Corp. Against APS and Milner)

101.    Plaintiffs restate and incorporate the allegations contained in Paragraphs 1-100 as if fully set forth herein.

102.    As parties to the Franchise Agreement and the Termination Agreement, A Corp. and APS and Milner owed implied duties of good faith and fair dealing to each other.

103.    A Corp. met its duty of good faith and fair dealing to APS and Milner and fully performed its contractual obligations.

104.    APS and Milner failed to fulfill its duty of good faith and fair dealing by failing to fully de-identify as Rooter Man, using the Rooter Man Marks without A Corp. or its assignee Rooter Man LLC's authorization, refusing to stop the unauthorized use after the termination of the Franchise Agreement and as required by the Termination Agreement and the Franchise Agreement, even after A Corp.'s cease and desist demands.

105.    As a result, A Corp has suffered and continues to suffer harm including without limitation monetary damages and damages to its reputation in the field.

WHEREFORE, A Corp. demands judgment in its favor on Count VI of this Complaint together with interest, costs, and attorney's fees.

## COUNT VII
### Conversion
### (by RooterMan LLC Against APS and Milner)

106.    Plaintiffs restate and incorporate the allegations contained in Paragraphs 1-105 as if fully set forth herein.

107.    With its continuous and consistent use of the Rooter Man Marks through its Rooter Man franchisees in the State of Tennessee in the past 20 years, A Corp. has established substantial goodwill associated with the Rooter Man Marks in Tennessee, which was assigned to RooterMan LLC as of January 20, 2022.

108.    All intellectual property and goodwill associated with the Rooter Man Marks, including the goodwill generated by the Franchisees and all other franchisees while conducting business under the Rooter Man Marks, is and shall remain the property of A Corp. which was assigned to RooterMan LLC as of January 20, 2022.

109.    APS and Milner's unauthorized use of Rooter Man Marks after their Franchise Agreement was terminated was with a clear attempt to pass off the goodwill associated with the Rooter Man Marks for their own commercial gain.

110.    APS and Milner's conduct deprived RooterMan LLC's property rights and constituted conversion that injured RooterMan LLC.

111.    As a result, RooterMan LLC suffered and continues suffering damages in an amount to be determined at trial.

WHEREFORE, Rooter Man LLC demands judgment in its favor on Count VII of this Complaint together with interest, costs, and attorney's fees.

### COUNT VIII
### Unjust Enrichment
### (by Plaintiffs against APS and Milner)

112.    Plaintiffs restate and incorporate the allegations contained in Paragraphs 1-111 as if fully set forth herein.

113.    APS and Milner's knowing and unauthorized use of the Rooter Man Marks in violation of RooterMan LLC's trademark rights was for commercial purpose and received financial benefit from such unauthorized use.

114.    APS and Milner's knowing and unauthorized use of the Rooter Man Marks after the termination of their Franchise Agreement in breach of the Franchise Agreement and Termination Agreement with A Corp. was for their own commercial gain.

115.    APS and/or Milner did not pay either RooterMan LLC or A Corp. for their unauthorized use of the Rooter Man marks.

116.    APS and Milner were unjustly enriched by its above conduct and caused damages to A Corp. and RooterMan LLC.

117.    As a result, A Corp. and RooterMan LLC suffered and continues suffering damages in an amount to be determined at trial.

WHEREFORE, A Corp. and RooterMan LLC demands judgment in its favor on Count VIII of this Complaint together with interest, costs, and attorney's fees.


## REQUESTS FOR RELIEF

WHERFORE, Plaintiff RooterMan LLC and A Corp. hereby respectfully request that this honorable Court enter Judgment in their favor as follows:

1.    Temporarily restrain, preliminarily and permanently enjoin APS and Milner, and their agents, representatives, and assigns from using the Rooter Man trademarks and/or their variants in any manner whatsoever, directly or indirectly, which include without limitation the following:

   a.    Rooter Man (and design) on September 3, 1991 (Reg. No. 1,655,782);

   b.  Rooter Man (words only) on October 12, 2010 (Reg. No. 3,859,654);

   c.  A Rooter Man to the Rescue (and design) on August 20, 1991 (Reg. No. 1,654,512);

   d.  Rooter Man Plumbers to the Rescue (and design) on August 14, 2012 (Reg. No. 4,189,503);

   e.  Rooter Man to the Rescue (and design) on March 17, 2020 (Reg. No. 6,013,446);

   f.  Rooter Man cartoon designs on April 7, 2020 (Reg. No. 6,027,468 & 6,027,470); and

   g.  Liquid Rooter (and design) on July 19, 1994 (Reg. No. 1,846,038).

2.   Order APS and Milner to be required to account for all gains, profits and advantages derived by them as a result of unauthorized use of the Rooter Man Marks.

3.   Enter judgment for A Corp. and RooterMan LLC and against APS and Milner on all counts as pleaded.

4.   Award RooterMan LLC its actual, statutory, or any other damages on all counts in amounts to be determined at trial.

5.   Award A Corp. its actual, statutory, or any other damages on all counts in amounts to be determined at trial.

6.   Award RooterMan LLC multiple damages and reasonable attorney's fees provided by the applicable statutes.

7.   Award A Corp. reasonable attorney's fees provided by the Franchise Agreement and the Termination Agreement between A Corp. and APS and Milner.

8.   Award A Corp. and RooterMan LLC such other relief as the Court may deem just and proper under the circumstances.

## VERIFICATION

      I, Donald MacDonald, acting as President and CEO on behalf of A Corp., hereby verify that the facts contained in the aforementioned Complaint are true and accurate to the best of my knowledge and belief.  Signed under the pains and penalties of perjury this 10th day of June, 2022.


  /s/ Donald MacDonald_____
Donald MacDonald
President & CEO
A Corp d/b/a ROOTER MAN


 

                                     Respectfully Submitted
                                     RooterMan LLC
                                     A Corp
                                     By their attorney,

                                        /s/ Juan Liu_____
                                     Juan (Jenny) Liu, BBO# 655921
                                     P.O. Box 290
                                     N. Billerica, MA 01862
                                     Tel: (978) 670-0718
                                     Fax: (978) 663-0061
                                     Email: lj@jennyliulaw.com

Date:    June 13, 2022